**Donald S. CAMPBELL, Plaintiff,**

v.

**GLACIER PARK COMPANY, a Minnesota corporation, Defendant.**

Civ. No. 2–73–40.

United States District Court,
D. Idaho.

Sept. 10, 1974.

Thomas A. Mitchell, Coeur d'Alene, Idaho, and Robert G. Schimanski, Schimanski & Leeds, Spokane, Wash., for plaintiff.

E. L. Miller, Miller & Knudson, Coeur d'Alene, Idaho, and Robert C. Williams, Seattle, Wash., for defendant.

## MEMORANDUM DECISION AND ORDER

J. BLAINE ANDERSON, District Judge.

### CASE SUMMARY

Plaintiff purchased a lot in defendant's subdivision known as Cape Horn Estates and located in Northern Idaho on Lake Pend Orielle. Plaintiff claims that subsequent to his purchase, defendant, by constructing a community recreation area within the subdivision, violated the covenants of Cape Horn Estates which were contained in a statement of record on file with the Department of Housing and Urban Development (HUD), and further violated the intent and purposes of the property report which was issued under the Interstate Land Sales Full Disclosure

Act, 15 U.S.C.A. § 1701 et seq. (1968). First, the Court must determine whether it has jurisdiction. If it does, the Court must determine whether the Interstate Land Sales Full Disclosure Act applies to enforcement of covenants contained in the statement of record and property report where there is no showing that such covenants were misrepresented, or omitted material facts, but were later amended in a lawful manner. Finally, under pendent jurisdiction the Court must determine if the covenants were violated under State Law.

### FACTS

The Court finds the facts in accordance with the stipulated facts as stated at trial and in the briefs and incorporates the same herein by reference. These findings are either discussed or adverted to during the course of this opinion. Findings on disputed facts also appear during the course of the discussion as do the Court's conclusions of law.

After plaintiff's initial written inquiry, defendant mailed to plaintiff a plat, map and a property report registered under the Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1701 et seq. to the plaintiff. The parties examined Lot 17, Block A, and plaintiff purchased Lot 17 for $12,050.00 on or about August 23, 1971. The covenants for Cape Horn Estates Development, which were made a part of the statement of record, read, in part, as follows:

"5. Seven and one-half foot easements for access roads and utilities shall be reserved along each side of each lot line.

9. It is intended that these lots are to be used for single family residences. No activity shall be carried on upon any lot which may be or become an annoyance or nuisance to the neighborhood, and no nonresidential, noisy or inharmonious use shall be permitted."

The property report under the Act read in part as follows:

"8. . . .

c. Buyer should determine permissible use of the property from local zoning authorities and from the Covenants of Cape Horn Estates.

9. a. . . . . . .

2. Private boat launching facilities are available at Cape Horn Resort one-quarter (¼) mile west of the subdivision, at Stewarts Resort one (1) mile west of the subdivision. Public launching is available three (3) miles west of the subdivision and at Farragut State Park five (5) miles west of the subdivision.

3. Marina facilities are available at Bayview.

4. Waterfront within the development is usable for boating and swimming.

. . . . . . .

b. No community recreational facilities are planned within the development."

In the Spring of 1972 defendant decided that an improvement in the form of a community area adjoining the water and including a deck over the water was essential to the subdivision. On May 16, 1972, defendant made application to the Corps of Engineers for a permit to construct the deck over the lake adjacent to Lots 19 and 20 and separated from plaintiff's lot by Lot 18. Plaintiff objected directly to the Corps of Engineers on June 20, 1972, and defendant was notified of plaintiff's objections by the Corps of Engineers on July 26, 1972. Discussion ensued between the parties without resolution on August 2, 1972, and after issuance of the permit, preliminary road widening commenced in the Fall of 1972. Construction was completed in April of 1973 and the community area consisted of a road, deck, stairs

and several picnic tables. This suit was commenced August 24, 1973.

Plaintiff's Exhibit 1 indicates that the lake level fluctuates 13 to 14 ft. each year. Plaintiff's oral testimony supports this fact. This would appear to render the deck either unusable or substantially restrict its use during portions of the year since it is grouted into the rocks and will not rise and fall with the lake level. Due to cold temperatures the swimming season on the lake is short, lasting only a couple of months.

Lots 19 and 20, because of the precipitous topography of a part thereof, are not suited for vehicle parking or, at best, will accommodate parking for only a few vehicles. The deck is not visible to plaintiff from his lot nor from most other lots in the subdivision since it is located at the water's edge at the bottom of a rock cliff. It is not a boat dock. It has no cleats nor other paraphernalia for boat docking. It is not designed for boat mooring rentals. It is not designed to facilitate the tying down of boats. It is a deck, not a dock. (Defs. Exh. No. 13) It is not contended by plaintiff that this is a commercial activity or that any commercial use is contemplated.

There is a 30 ft. roadway and utility easement actually constructed bisecting Lot 17 and providing access to and from the main service road and to and from and bisecting Lots 12 through 26, inclusive. (Defs. Exh. Nos. 10 & 13) Additionally, there is a reservation for a 7½ ft. roadway and utility easement on each side of each lot line (a total of 15 ft.) which, upon the exercise thereof, could provide public access along the plaintiff's lot line on each side for access to the shoreline. Because of this reserved easement and the existence of the 30 ft. roadway, the plaintiff simply could not have a reasonable expectation of the extent of the privacy he now says he did expect when he purchased the lot. (Pl's. Exh. No. 3, paragraphs 5 & 7) There is no evidence that the limited use of the recreation area is noisy or unsightly.

Plaintiff has not, by his own testimony and admissions, and that of his expert witness, incurred a diminution in the value of his.Lot 17 by reason of the location of the community area. On the contrary, he and his witness testified to a substantial increment in value from $12,050.00 at purchase in August, 1971, to $22,000.00 to $29,000.00 as of the date of trial, June 12, 1974, even with the community area constructed and in use.

I.

■ Defendant contends the Court is without jurisdiction to determine the cause of action. Federal court jurisdiction is conferred by Section 1719 of the Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1719, regardless of the amount in controversy. The United States Supreme Court, when considering the same question as applied to the Securities Act of 1933, ruled that jurisdiction is granted by 15 U.S.C.A. § 77v, irrespective of the amount in controversy. Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940). The language of 15 U.S.C.A. § 1719[1] is virtually identical to

---

I. "§ 1719. *Jurisdiction of offenses and suits*
The district courts of the United States, the United States courts of any territory, and the United States District Court for the District of Columbia shall have jurisdiction of offenses and violations under this chapter and under the rules and regulations prescribed by the Secretary pursuant thereto, and concurrent with State courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter. Any such suit or action may be brought to enforce any liability or duty created by this chapter. Any such suit or action may be brought

in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 1254 and 1291 of Title 28. No case arising under this chapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States, except where the United States or any officer

the language of 15 U.S.C.A. § 77v.[2] Furthermore, though not stated expressly, this appears to be the jurisdictional approach by other courts when considering the Interstate Land Sales Full Disclosure Act. See Adolphus v. Zebelman, 354 F.Supp. 309 (E.D.Mo.), affirmed 486 F.2d 1323 (8th Cir. 1973). See also Young v. Trailwood Lakes, Inc., 61 F.R.D. 666 (E.D.Ky.1974).

■ Plaintiff's complaint alleges registration of the subdivision under the Act; his purchase of the lot in reliance on the contents of the property report; and that subsequent to such purchase, defendant violated the intent and purpose of the property report and of the Act by the development and construction of the community recreational facility, and that he has suffered damage by reason thereof. He also seeks equitable relief. On the pleadings alone, the Supreme Court, in *Deckert*, found jurisdiction in the District Court under the Securities Act, 15 U.S.C.A. § 77v, "to enforce any liability or duty created" under the Act. By a liberal interpretation of plaintiff's allegations and by analogy to *Deckert*, this Court finds that it has jurisdiction without regard to the amount in controversy or the citizenship of the parties.

## II.

■ Defendant moved at the close of the plaintiff's evidence for involuntary dismissal of this suit with prejudice for failure to prove any claim for which relief could be granted. This motion was taken under advisement. This Court must determine whether the allegations in the complaint are supported by any substantial proof submitted at trial to afford any basis for relief under the Act. Plaintiff did not allege any material misrepresentations or nondisclosure of material facts and conceded in briefs and at trial that this suit is not predicated upon fraud, misrepresentation or nondisclosure. Having failed to prove the essential elements of misrepresentation or nondisclosure, the plaintiff has failed to prove a claim for which relief can be granted under the Interstate Land Sales Full Disclosure Act. 15 U.S.C.A. § 1701 et seq. Hoffman v. Charnita, 58 F.R.D. 86 (M.D.Pa.1973). Plaintiff, however, requests the court to go beyond the language of the Interstate Land Sales Full Disclosure Act. Specifically, plaintiff argues the "purpose and spirit" of the Act have been violated by the subsequent construction of the community area within the subdivision in violation of the covenants contained in the statement of record and property report and seeks relief in equity or at law for such violation.

■■ The legislative scheme of the Interstate Land Sales Full Disclosure Act contemplates the filing and disclosure of material facts to a purchaser of a lot in a subdivision required to be registered under the Act. The Act re-

or employee of the United States in his official capacity is a party. No costs shall be assessed for or against the Secretary in any proceeding under this chapter brought by or against him in the Supreme Court or such other courts."

2. "77v. *Jurisdiction of offenses and suits*
(a) The district courts of the United States, and the United States courts of any Territory, shall have jurisdiction of offenses and violations under this subchapter and under the rules and regulations promulgated by the Commission in respect thereto, and, concurrent with State and Territorial courts, of all suits in equity and actions at law brought to enforce any liability or duty created by this subchapter. Any such suit or ac-

tion may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found. Judgments and decrees so rendered shall be subject to review as provided in sections 225 and 347 of Title 28. No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States. No costs shall be assessed for or against the Commission in any proceeding under this subchapter brought by or against it in the Supreme Court or such other courts."

quires, among other elements, disclosure of all covenants plus the nature of improvements to be installed by the developer, together with the estimated schedule of completion. 15 U.S.C.A. § 1705. The Interstate Land Sales Full Disclosure Act does not purport to confer a right of action for the enforcement of covenants contained in a statement of record and property report *except* (emphasis supplied) where such covenants were untrue or contained material omissions at the time of purchase. 15 U.S. C.A. § 1703.

■ The Act contemplates that a developer may subsequently amend his statement of record and property report. Indeed, he is required to do so if "a change shall occur affecting any material fact required to be contained in the statement", 15 U.S.C.A. § 1706(c). In the Spring of 1972, defendant decided to construct the community site and filed an amended statement of record and property report emphasizing the community facilities described hereinbefore. The amendment was approved June 15, 1972, by the Secretary. Plaintiff purchased under the initial statement of record and the second filing affords him no notice although, as previously found, plaintiff did have actual notice. There is no evidence that the Secretary suspended the effectiveness of the statement of record "in the public interest or for the protection of purchasers". 15 U.S.C.A. § 1706(c). There is nothing in the Act, read as a whole, that would give rise to any justiciable claim of a violation of the "spirit or purpose" of the Act, either directly or by implication, where a developer proceeds to do precisely what the Act requires him to do, i. e., amend his statement of record where there is subsequent change. There is no proof in this record that defendant or anyone acting on its behalf harbored any intent to build a community facility when the sale was made to plaintiff in August of 1971. There is nothing in the Act requiring the developer or the Secretary to give notice to a prior purchaser when an amendment is filed or approved. The subsequent amendment and construction of the community facility may be probative of the violation of the restrictive covenants under which plaintiff purchased, but it furnishes no cause of relief under the Act on this factual situation. Plaintiff, therefore, has not shown a right to relief under the Act under his theory of a violation of the "purpose and spirit" of the Act.

### III.

■ The federal statutory claim seeking enforcement of covenants as violative of the spirit and purpose of the Interstate Land Sales Full Disclosure Act, 15 U.S.C.A. § 1701 et seq., together with claim for enforcement under state law, raises the issue of whether this court should in its discretion exercise pendent jurisdiction. The case at bar is well within the parameters of pendent jurisdiction as announced in the leading case of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), as the federal and state claims arise from the same nucleus of operative facts and all claims are such as would be expected to be tried in one judicial proceeding. Having due regard for state interests, and in the interests of justice and fairness to the parties, this court elects to exercise pendent jurisdiction.

■ The primary approach under state law in construing covenants is one based on the parties' intent; however, this is subject to the further principle that restrictive covenants are strictly construed in favor of the free use of property. Burton v. Douglas County, 65 Wash.2d 619, 399 P.2d 68, 70 (1965); Smith v. Shinn, 82 Idaho 141, 147, 350 P.2d 348 (1960). Words when unambiguous must be taken in their ordinary and proper sense. Burton v. Douglas County, supra. As a construction aid, the principle of ejusdem generis is applied by courts but never to defeat the plain, obvious intention of the restriction. 20 Am.Jur.2d, Covenants § 188 (1965). Smith v. Second Church of

Christ, Scientist, Phoenix, Arizona, 87 Ariz. 400, 351 P.2d 1104 (1960). The ejusdem generis rule is such that where a particular enumeration in a restrictive covenant is followed by general terms, the latter will be understood as limited in their scope to matters and things of the same general kind or character as those specified in the particular enumeration, unless there is something to show a contrary intent. 20 Am.Jur.2d, Covenants § 188 (1965); Smith v. Second Church of Christ, Scientist, Phoenix, Arizona, supra.

 With reference to covenant 9, supra, which was made a part of the statement of record, the use of property is limited to single family residences. The covenant further contemplates additional "activity" but limits activity on such property so that it will not become an annoyance or nuisance to the neighborhood, and, likewise, no nonresidential, noisy or inharmonious use shall be permitted. Covenant 9 contemplates residential use *and activity* as distinguished from commercial activity and activity which would be inharmonious to the *neighborhood* (emphasis supplied) or would otherwise amount to a nuisance. Threedy v. Brennan, 131 F.2d 488 (7th Cir. 1942). The language is similar to language contained in a covenant in the case of Davis v. Miller, 212 Ga. 836, 96 S.E.2d 498 (1957), which provided, in part . . . "will not carry nor permit any matter or thing which shall be a nuisance, unwholesome or offensive to the neighborhood or neighbors upon any of said lots". The court in Davis v. Miller held that the words "unwholesome or offensive" to the neighborhood were included in the definition of nuisance. Covenant 9 contemplates no use other than single family residences, but, in addition, by negative implication permits residential activity which is not a nuisance or annoyance to the neighborhood.

The entire context of the covenant must be considered. Smith v. Shinn, 82 Idaho 141, at 147, 350 P.2d 348 (1960). The language of the covenant, together with special reference therein to the character of the neighborhood as a whole, the limited use to which the community area can be devoted, and the harmonious nature of the community area in question do not foreclose the community area in this case.[3] Threedy v. Brennan, supra. Community and recreational areas are within the general definition of residential activity and uses. In addition, as applied to plaintiff's property, the community area is not a nuisance nor is it inharmonious, as virtually uncontradicted evidence at trial indicates that plaintiff cannot see the deck from his property. Furthermore, plaintiff's lot is separated from the community area by Lot 18, which is partially forested and 75 feet wide. There is no substantial believable evidence that this covenant has been violated. On the contrary, and the Court so finds, the limited recreational use that may be made of the recreational area is entirely harmonious and consistent with paragraph 9 of the restrictive covenants and there has been no actionable violation.

 Plaintiff relies on Ottawa Shores Home Owners Association, Inc., v. Lechlak, 344 Mich. 366, 73 N.W.2d 840 (1955), a suit to restrain defendant from using lake shore property for commercial purposes. *Ottawa Shores* is not controlling and is distinguishable because in *Ottawa Shores* the covenant was more restrictive limiting "structures" to dwelling homes and garages, and was clearly violated by the commercial enterprise of renting dock space. Plaintiff also relies on Edgewood Park Ass'n., Inc. v. Pernar, 350 Mich. 204, 86 N.W.2d 269 (1957). Although *Edgewood Park* is similar to the facts of this case, it is not controlling. The court in

---

3. The need for recreational areas and open-space land in urban centers has been recognized by Congress, 42 U.S.C.A. § 1500 et seq. The concept extends as well to subdivision planning. The Idaho Legislature recognizes the need for adequate light and air, preven-

tion of overcrowding and adequate provision for parks through the requirement of comprehensive plans in city and county zoning and other public planning. Sec. 50–1203 and Sec. 67–4219, Idaho Code.

*Edgewood Park* realized that each case must be determined on its own particular facts, with respect to language of the covenant *and* the use and activity in question. Edgewood Park Ass'n., Inc. v. Pernar, supra, p. 209. In *Edgewood Park*, the covenant was more restrictive —limiting construction to one single family residence and without any language such as appears in the second sentence of Covenant 9. Furthermore, the property report of Cape Horn Estates contemplates in Covenant 9(a)(4) the availability of waterfront for boating and swimming. The intent and purpose of the community area in question is to provide lake access to secondary lot owners. Covenant 9(b) states that community recreational facilities are *not* planned within the development. This covenant is not violated because it does not amount to a promise *not* to construct community recreational facilities in the future, but rather contemplates such a possibility in the future. When reading Covenant 9(a)(4) of the property report and Covenant 9 of the statement of record in their entirety, there is no intent to forever exclude the community area in question. Smith v. Shinn, supra. Such a reading is consistent with the intent of the parties, the overall plan as stated in the property report and the statement of record and the usual meaning of the words used.

 Assuming, arguendo, that there has been a breach of the covenant, it is technical only and de minimis, with no damage or injury ensuing to plaintiff other than wounded feelings and perhaps some trifling loss of privacy and aesthetics. Mr. Caddis, defendant's well-qualified expert witness, testified that the location of the recreational site neither added to nor detracted from the value of Lot 17 and the Court so finds. Furthermore, of the 34 lots in Cape Horn Estates which had been sold at the time of trial, 27 were purchased after or shortly before June of 1972, when the amended property report was approved. See Defendant's Exhibit No. 11. These purchases were made in reliance upon the amended property report or a representation of a forthcoming amendment providing for a community area. The remaining 7 lots, including plaintiff's, were purchased in reliance upon the original property report and covenants. However, of the 7, only plaintiff has complained. The other 6 lot owners have not joined in plaintiff's attempts to remove the community area. From the foregoing, it is a logical assumption that the community area has met with the approval of all of the lot owners, except plaintiff. Therefore, while not controlling, this is a factor which the Court can and has considered in determining where the equities lie, as plaintiff's request for equitable relief addresses itself to the Court's sound discretion. Cf. Suchan v. Rutherford, 90 Idaho 288, 302, 410 P.2d 434, 443 (1966). The Idaho Supreme Court and this Court have balanced equities in past cases. See McCarthy v. Bunker Hill & Sullivan Mining & Coal Co., 147 F. 981 (C.C.Idaho 1906), modified—McCarthy v. Bunker Hill & Sullivan Mining & Concentrating Co., 164 F. 927 (9th Cir. 1908), cert. denied, 212 U.S. 583, 29 S.Ct. 692, 53 L.Ed. 660 (1909); Koseris v. J. R. Simplot Co., 82 Idaho 263, 268, 352 P.2d 235 (1960). In light of the facts herein, and on balance, the equities lie in favor of the defendant. The proof is insufficient to invoke this Court's equitable powers in a manner favorable to plaintiff or to sustain a damage award.

## IV.

Other issues raised by the parties need not be decided.

It is, therefore, ordered that plaintiff take nothing by his complaint herein and judgment will be entered in favor of defendant and against the plaintiff. Defendant to recover its costs.

Pursuant to Rule 52, F.R.Civ.P., this memorandum shall constitute the essential findings of fact and conclusions of law. Defendant's counsel shall forthwith prepare and submit to the Court for approval and entry a proposed judgment effectuating the decision herein.