DONNELLY v. SPITZA.

1. COVENANTS—BUILDING RESTRICTIONS—CONSTRUCTION OF RESTRICTION.

Covenants in a deed restricting the use of the property conveyed are to be construed with reference to the present and prospective use of property, as well as to the specific language employed, and upon their reading as a whole rather than from isolated words.

2. SAME—"DUPLEX HOUSES" CONSTRUED TO MEAN HOUSES FOR TWO-FAMILY OCCUPANCY.

The purpose of a covenant restricting the use of a lot to "only single dwelling houses, duplex or double houses," costing not less than a certain sum, *held*, to restrict the houses to those adapted to not more than two-family occupancy, and not intended to irrevocably fix the character of construction to that common to the times and to prevent developments which later change of style, taste, or practical necessity would bring.

3. SAME—"DUPLEX HOUSE" GIVEN COMMON-SENSE CONSTRUCTION IN ABSENCE OF DEFINITE MEANING.

Where the phrase "duplex house," as used in a covenant restricting the use of the lot conveyed, did not, at that time, have any definite, settled meaning, either in common acceptance or as a technical trade name, it must be taken to mean what the common-sense construction of its words mean.

On the question as to whether multiple residence structures is violation of restrictive covenants, see annotation in 45 L. R. A. (N. S.) 728; L. R. A. 1918C, 873.

4. SAME—"DUPLEX HOUSE" AND "DOUBLE HOUSE" DISTINGUISHED.
 The phrase "duplex house," as used in a covenant restricting the use of the lot conveyed, is construed to mean a house which has accommodations for two families on two or more floors without regard to whether these accommodations are identical or not, and is used in contradiction to the phrase "double house," which means a building having accommodations for two families divided vertically instead of horizontally.

5. SAME—INJUNCTION—ERECTION OF "INCOME BUNGALOW" NOT A VIOLATION OF "DUPLEX HOUSE."
 A suit to enjoin the erection of an "income bungalow," a building intended for the use of two families, one above and the other below, on the ground that it was in violation of a covenant restricting the use of the lot conveyed to "duplex houses," was properly dismissed, since the evident purpose of the covenant was to restrict the houses to two-family occupancy.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 16, 1929. (Docket No. 136, Calendar No. 33,734.) Decided March 29, 1929.

Bill by Thomas S. Donnelly against Stephen D. Spitza and the Property Development Corporation, a corporation, to enjoin the violation of building restrictions. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Thomas S. Donnelly* and *George J. Haines,* for plaintiff.

*William Durance,* for defendants.

FEAD, J. This is an action to restrain erection of an "income bungalow" on a lot restricted to "only single dwelling houses, duplex or double houses," costing not less than $6,500. The restrictions were imposed in October, 1919, defendant Spitza purchased in November, 1919, and began construction

in 1927. The term "income bungalow" was not known in Detroit when these restrictions were written. It became current some four to six years ago. It signifies generally a story-and-a-half house of bungalow type, and was developed to aid the owner financially in enabling him to occupy the lower story and to rent the upper part. It has no separate entrances for the families, has one furnace, one cellar, and the upper rooms are fewer and differently arranged than the lower. Plaintiff claims that while an income bungalow is a residence for two families, it is not covered by the word "duplex" in the restrictions, because it is of cheaper construction, the duplex has two full stories with an attic above, two complete apartments practically identical, two furnaces, two coal bins, two cellars, and two sets of laundry tubs. This claim sets up the widest points of difference, as the testimony was conflicting on several of them. The points of resemblance seem to be that both are for occupancy of two families only, and both resemble single dwellings in outward appearance. The books disclose no distinctive definitions of duplex houses and income bungalows. There appears to have been no official recognition of the terms in the building trades or professions. The witnesses, consisting of architects, building contractors, real estate operators, and engineers disagreed upon the differences and upon the classification of the building at bar.

Covenants are to be construed with reference to the present and prospective use of property as well as to the specific language employed and upon their reading as a whole rather than from isolated words. It is hardly to be supposed that a restriction in 1919 was intended to irrevocably fix the character of construction to that common to the times, and to

prevent developments which later change of style, taste, architectural idiosyncrasy, or artistry, or practical necessity, convenience, or utility would bring. The evident purpose of the covenants was to restrict the houses to those adapted to not more than two-family occupancy, and, if the distinction existed between a duplex and a two-family flat, which was claimed by some of the witnesses, to buildings which look like single dwellings.

The learned circuit judge filed an opinion, from which we quote, with approval:

"Under the testimony, the phrase income bungalow did not come into use in the city of Detroit until approximately four years after this subdivision was created, and after these restrictions were written. The conflict in the testimony is such that it cannot fairly be said that the phrase duplex house had at that time any definite, settled meaning, or that it has at the present time any definite or settled meaning which was well understood either as a phrase in common acceptance or as a technical trade name. Therefore the phrase must be taken to mean what the common-sense construction of its words means. I am of the opinion that the phrase duplex house means a house which has accommodations for two families on two or more floors without regard to whether these accommodations are identical or not. In this restriction that phrase is used in contradiction to the phrase double house, and double house means a building having accommodations for two families divided vertically instead of horizontally. It seems natural and reasonable to conclude that the intention of the subdividers was to impose a restriction upon the use of each lot, in the first place, for residence purposes only, and in the second place for the residence thereon of not more than two families in one building under one roof. It seems

to me that the phrase duplex house and double house were adopted as a flexible way of saying that those two families might live under one roof either on separate floors or on separate sides of the same building.''

The decree dismissing the bill is affirmed, with costs.

NORTH, C. J., and FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.