OTTAWA SHORES HOME OWNERS ASSOCIATION,
INC., *v.* LECHLAK.

1. COVENANTS—CONSTRUCTION OF RESTRICTIONS.
    Generally, restrictions upon the free alienation of property are not favored and are usually strictly construed against those seeking to enforce them.

2. SAME—BUILDINGS—USE OF PROPERTY.
    Restrictions apply not only to the kind of buildings to be erected on land, but, also, to the use of the property.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 14 Am Jur, Covenants, Conditions and Restrictions § 212.
[3] 56 Am Jur, Waters § 273 *et seq.*
[4] 56 Am Jur, Wharves § 28.
[5] 14 Am Jur, Covenants, Conditions and Restrictions § 210 *et seq.*
[6] 14 Am Jur, Covenants, Conditions and Restrictions § 217.
[7] 14 Am Jur, Covenants, Conditions and Restrictions § 192 *et seq.*

3. WATERS AND WATERCOURSES—RIPARIAN RIGHTS—TITLE.

A grant of land bounded by a watercourse conveys riparian rights, unless the contrary appear, and the title of the riparian owner extends to the middle line of the lake or stream.

4. SAME—DOCKS.

Docks extending into stream bounding defendant's lots are to be considered as a part of his lots, and as such are structures.

5. COVENANTS—CONSTRUCTION OF RESTRICTIONS—GENERAL PLAN.

Restrictions that are not clear and about which there may be doubt as to intent and meaning may be construed in the light of surrounding circumstances and general plan under which the restrictive district was platted and developed.

6. SAME—RESIDENCE RESTRICTION—DOCKS—PARKING CARS—BOATS— MINNOWS.

Use of 2 river-front lots for parking of cars and docks for renting boats and sale of minnows was a use contrary to restrictions limiting use of property to residential purposes, which restrictions in defendant's deed prohibited structures other than residences and garages except as approved by association of which lot owners were members and none of the homes were built for commercial purposes.

7. SAME—DOCKS—RESIDENTIAL USE—QUESTIONS REVIEWABLE.

Issue as to whether docks extending into river in front of defendant's lots violated residential restrictions on subdivision in which lots were located *held*, properly before trial court and Supreme Court by virtue of allegations in bill to enjoin him from selling bait, renting space for docking boats, and maintaining a parking lot for his customers on his premises where defendant was conducting such commercial activities and was planning extension thereof and in reasons and grounds for appeal plaintiff complained that trial court did not find deed restricted use of property to residential uses and that conduct of such business was proper.

Appeal from Monroe; Golden (Clayton C.), J. Submitted October 7, 1955. (Docket No. 52, Calendar No. 46,168.) Decided December 28, 1955.

Bill by Ottawa Shores Home Owners Association, Inc., a Michigan corporation, against Anthony Lechlak to restrain use of his property for commercial

purposes. Bill dismissed. Plaintiff appeals. Reversed.

*Edgar G. Gordon, Jr.* (*Frank E. Mensing,* of counsel), for plaintiff.

*Thomas E. Griffin* (*Leo P. Frankowski,* of counsel), for defendant.

SHARPE, J. This is a suit in equity to restrain defendant from selling bait, renting space for docking boats, and maintaining a parking lot for his customers on his premises. Defendant is the owner of 2 water-front lots, lots 81 and 82 of Ottawa Shores, a subdivision in Erie township, Monroe county, Michigan. Plaintiff is an association organized by reason of the provisions contained in the deeds to lot owners, and is incorporated under the nonprofit laws of the State of Michigan.

The issues arising out of this case were created by virtue of defendant constructing 2 docks which extend from his shore line approximately 115 feet into the Ottawa river. The docks are used in connection with defendant's business. Ottawa Shores was platted by the Pheatt heirs and recorded in July, 1947. The streets in the platted property were dedicated to the use of the property owners. In 1939 the Pheatt heirs, through Richard Pheatt, their agent, rented a site to defendant who built a cottage upon or in the area as was later subdivided as lots 81 and 82 Ottawa Shores. At the time defendant built his cottage he was working for a brewery. In 1944 defendant made his cottage his permanent place of residence. At that time defendant had built a dock extending into the river. He started the sale of minnows in 1945, and kept the minnows out in the river in a tank at the end of his dock. About 90% of defendant's customers come by water. A

few cars parked on his property from 1945 to 1948, and he now maintains a parking lot for his customers. He has had a sign erected advertising the sale of bait since 1945. He has a license for the sale of minnows. In 1948 defendant built another dock extending out into the river. On November 5, 1947, defendant purchased the lots in question and continued his business of renting boats and selling bait until the present time. The deed received by defendant contained the following provisions:

"The grantor herein by accepting this deed shall *ipso facto* become a member of Ottawa Shores Home Owners Association, an unincorporated association composed of the owners of lots in Ottawa Shores.

"In said association each member thereof shall be entitled to 1 vote for each lot owned by him or her, and said association shall act through a board of trustees to be elected by the association of such number and for such term as it may determine.

"Said board of trustees shall have authority, except as limited by the association, to:

"(a) Adopt general rules and regulations (not inconsistent with items 1 to 6 above) which said board deems to the best interests of the lot owners as a whole and reasonably so designed which shall be binding upon the lot owners and each of them."

Subsequently deeds were issued to other owners in the subdivision which contained the following provisions:

"The grantee herein by accepting this deed shall *ipso facto* become a member of Ottawa Shores Home Owners Association, a corporation to be formed under the laws of Michigan for and composed of the owners of lots in Ottawa Shores.

"In said association each member thereof shall be entitled to 1 vote for each lot owned by him or her, and said association shall act through a board of trustees to be elected by the association of such number and for such terms as it may determine.

"Said board of trustees shall have authority, except as limited by the association:

"(a) To adopt general rules and regulations (not inconsistent with items 1 to 6 above) which said board deems to the best interests of the lot owners. as a whole and reasonably so designed which shall be binding upon the lot owners and each of them."

On June 16, 1951, Ottawa Shores Home Owners Association was organized, and on July 2, 1951, it was incorporated. Defendant is a member of the association and paid the initial fee of $12.50 per lot. At the time the instant suit was commenced,. about 35 lots were deeded to individual home owners.. The approximate value of the combined cottages erected is between $150,000 and $200,000. None of the homes are built as commercial structures. All. of such cottages are residences.

The cause came on for trial, and at its conclusion. the court entered a decree dismissing plaintiff's bill. of complaint, holding that defendant's real estate. should not be limited to residential use, and that his carrying on of commercial uses is a proper use of the premises. In an opinion the trial court stated:

"The Court understands it is the theory of the. plaintiff in this case that this deed read in its entirety should, by implication, be held by the court to include the restriction against the use of this. property for commercial purposes. The court has examined the deed and the various restrictions contained therein, and applying the rules of construc-- tion as they exist in this State the court is of the. opinion that the deed does not restrict the use of this property solely to residential purposes.

"There is another matter that in the opinion of the court is not too important, but it has apparently entered into the theory of the plaintiff herein: that is, that the deed required the defendant when he.

received this deed to become a member of the Ottawa Shores Home Owners Association to be formed; that such association was subsequently formed, and that association in its articles of association reserved the right to restrict the entire plat area to residential purposes. I do not think that that is tenable, for 2 reasons: First, under the evidence in this case, if it is a sustainable theory, all the corporation acquired was the power to do that, which power has not been exercised prior to the institution of this suit by act of the corporation; secondly, if the interpretation of the deed, as the court construes the plaintiff's position, means that he received the deed, that his occupancy and use of the premises conveyed under the provisions of the deed could be limited by the corporation without consent of this defendant, and that the extent of the occupancy and the consequent ability to alienate the property and the number of prospective purchasers might be limited by changing the character of usage of this property —The court is of the opinion that that is such a provision that is entirely contrary to the conveyance by warranty deed and the title in fee simple, and that it has no place in the deed and must be considered as void, as repugnant to the title in fee simple."

Plaintiff appeals and urges that the trial court was in error in holding that defendant's deed did not preclude the sale of minnows, the renting of boat spaces and maintaining a parking lot for customers on his property.

The record shows that the Pheatt heirs on November 5, 1947, conveyed to defendant lots 81 and 82. The deed contained various provisions of which the following are material:

"Provided however that said premises and all other lots in the plat of Ottawa Shores shall be held, owned and occupied subject to the following restric-

tions, covenants and agreements which shall inure to the benefit of each and all of said lots, to-wit:

"1. No dwelling house shall be constructed on any lot other than one well and substantially constructed, one reasonably designed for all season use and one equipped with complete indoor modern toilet facilities and with modern, efficient septic tanks.

"2. A well-constructed garage may be built on any lot, but no other structure shall be erected on any other lot excepting such as are approved by Ottawa Shores Home Owners Asociation."

It is the theory of defendant that he built his dwelling in accordance with the provisions contained in his deed, and we note that plaintiff does not make any claim of violation insofar as the dwelling is concerned. Defendant urges that the restrictive covenants contained in the deed do not forbid commercial use of the property.

It is the general rule that restrictions upon the free alienation of property are not favored by the law and are usually strictly construed against those seeking to enforce them. Restrictions apply not only to the kind of buildings to be erected, but, also, to the use of the property, see *Boston-Edison Protective Ass'n* v. *Goodlove*, 248 Mich 625; *Bohm* v. *Rogoff*, 256 Mich 199; *Nerrerter* v. *Little*, 258 Mich 462.

Do. the restrictions in defendant's deed apply to structures in the Ottawa River built by defendant? The answer to this question may be found in *Grand Rapids Ice & Coal Co.* v. *South Grand Rapids Ice & Coal Co.*, 102 Mich 227, 236 (25 LRA 815, 47 Am St Rep 516), where we said:

"Unless the contrary appear, a grant of land bounded by a watercourse conveys riparian rights (*Richardson* v. *Prentiss*, 48 Mich 88); and the title of the riparian owner extends to the middle line of the lake or stream."

See, also, *Sewers* v. *Hacklander,* 219 Mich 143.

From the above authority it is manifest that defendant's docks are to be considered as a part of defendant's lots, and as such are structures.

It is a general rule that where the intent and meaning of restrictions are not clear, they may be construed in the light of surrounding circumstances and general plan under which the restrictive district was platted and developed. In *Holderness* v. *Central States Finance Corporation,* 241 Mich 604, 607, we said:

"In placing a proper construction upon these restrictions, if there can be said to be any doubt about their exact meaning, we must have in mind the subdivider's intention and purpose. *Weiss* v. *Zack,* 237 Mich 10. The restrictions in question must be read as a whole and construed in the light of the general plan under which the restrictive district was platted and developed. *Tabern* v. *Gates,* 231 Mich 581."

See, also, *Library Neighborhood Ass'n* v. *Goosen,* 229 Mich 89.

In the case at bar defendant purchased his property with knowledge that all lots in the platted property would be owned and occupied for residential purposes, subject to the restrictions contained in his deed. It clearly appears that Ottawa Shores is a residential area. None of the homes are built for commercial purposes. It follows that the use defendant is making of his premises is in violation of the restrictions imposed upon all lots in Ottawa Shores.

Defendant urges that plaintiff did not raise the question of the docks violating the restriction until the cause was appealed to the Supreme Court.

We note that paragraph 14 of plaintiff's bill of complaint reads as follows:

"That the defendant herein, not content with attempting a modified or limited violation, has now extended his prospective operations for the summer of 1952, by having built 2 great lengths of floating dock, projecting outward into the stream, and into the riparian waters in front of the plat and his premises. These docks are planned by him and intended by him, to be used as parking docks and as increased livery activities, to the extent that his capacity of serving the general public in this manner, has now been practically doubled over which he practiced in the season of 1951. He now has the capacity that could well accommodate approximately 50 such transients daily and semidaily, who all come by automobile, and who make certain noises and disturbances common to those who talk loudly, make such unnecessary noise with their automobiles and their outboard and other water motors, and who shout and otherwise celebrate as they go about their fishing, hunting, and other sporting and recreational activities."

In plaintiff's reasons and grounds for appeal we find:

"That the trial court erred in finding that the deed in question does not contain any restrictions limiting the use of the property to residential purposes.

"That the trial court erred in finding that defendant's real estate herein involved should not be limited to residential use.

"That the trial court erred in finding that defendant's carrying on of commercial uses thereon is proper."

In our opinion the issue as to the use of the docks was before the trial court and properly before us on appeal.

The decree is reversed and a decree will be entered in the circuit court of Monroe county enjoining de-

fendant from using his docks for commercial purposes.  Plaintiff may recover costs.

CARR, C. J., and BUTZEL, SMITH, BOYLES, REID, and KELLY, JJ., concurred with SHARPE, J.

DETHMERS, J., concurred in the result.