BOROWSKI v WELCH

Docket No. 58412. Submitted April 20, 1982, at Lansing.—Decided
    July 12, 1982.

   Mary Borowski, president of the Fox Bay Civic Association, Inc.,
      and the association brought an action against Chester Welch
      and other residents of Fox Bay Subdivision to enjoin the
      defendants from allegedly violating a restrictive covenant pro-
      hibiting house trailers, trailers, coaches, tents, or temporary
      shelters from being placed on the lots in the subdivision. Welch
      owned a motor home which he parked in his driveway. The
      Oakland Circuit Court, Francis X. O'Brien, J., granted judg-
      ment in favor of defendant Welch. Plaintiffs appeal. *Held:*

      The covenant herein, when construed as a whole with refer-
      ence to the present and prospective use of the property, being
      concerned more with the intent of the restrictor than with the
      strict letter of the language and taking the language in its
      generally understood sense, prohibits a class of large vehicles,
      such as defendant's motor home. The trial court erred in
      holding that motor homes were not included in the restriction.
      Reversed.

1. COVENANTS — JUDICIAL CONSTRUCTION — INTENT OF PARTIES.
      A court must give effect to a restrictive covenant as a whole
      where the intent of the parties is clearly ascertainable; the rule
      pertaining to the resolution of doubts in favor of the free use of
      property is not applicable where the intent is clear and no
      interpretation is necessary.

2. COVENANTS — JUDICIAL CONSTRUCTION.
      Restrictive covenants are to be construed in light of the general
      plan under which the restricted district was platted and devel-
      oped, arriving at the intention of the restrictor if that can be
      ascertained from the entire language of the instrument, taking
      that language in its ordinary and generally understood or
      popular sense.

REFERENCE FOR POINTS IN HEADNOTES

[1-3] 20 Am Jur 2d, Covenants, Conditions, and Restrictions §§ 185,
    186.

3. COVENANTS — JUDICIAL CONSTRUCTION — USE OF PROPERTY.

   Covenants are to be construed with reference to the present and prospective use of property as well as to the specific language employed, reading the language as a whole rather than from isolated words.

*Stanton L. Walker,* for plaintiffs.

*Theodore J. Kohn,* for defendant.

Before: M. J. KELLY, P.J., and CYNAR and G. R. COOK,* JJ.

CYNAR, J. Plaintiffs appeal as of right from a May 8, 1981, order of the trial court which denied plaintiffs injunctive relief and granted judgment in favor of defendant, Chester Welch. We reverse.

Defendant is a resident of Fox Bay Subdivision in Oakland County. All of the property within the subdivision, including defendant's, is subject to certain restrictive covenants. The restrictive covenant which is at issue in this case states as follows:

"14. No house trailer, trailer, coach, tent or temporary shelter including fishing shanty, shall be parked, placed, erected or occupied on said premises, except an unoccupied trailer or fishing shanty may be totally stored in a garage thereon."

Plaintiffs, the subdivision homeowner's association and the president thereof, brought an action seeking injunctive relief against defendant, alleging that the defendant was violating the above restriction by parking a motor home in his driveway. The parties stipulated that defendant's motor home was 19 feet to 20 feet in length, 7 feet wide, and approximately 10 feet high. Defendant Welch

* Circuit judge, sitting on the Court of Appeals by assignment.

uses the motor home as daily transportation to and from work and also as a residence during vacations.

According to Welch's testimony, his motor home was self-propelled by a 350 GMC engine. It was furnished with a gas furnace, appliances, beds, and toilet facilities. The motor home was carpeted and could sleep from four to six persons. It did not have a power generator, but was equipped with a 110-volt hook-up and had a limited source of battery power. Defendant Welch testified that on one occasion, when an ice storm caused a power failure in his home, he spent the night in the motor home parked in his driveway. Defendant parked the motor home in his driveway whenever he was not using it.

John Kennedy, a real estate appraiser, testified that property values in a subdivision such as Fox Bay are negatively affected by the presence of motor homes parked in driveways within the subdivision. Plaintiff Borowski testified that, as president of the homeowner's association, she believed motor homes were prohibited by the restrictive covenant in question because a motor home is embraced within the definition of a "coach" or "temporary shelter", both of which are proscribed by the restriction.

The trial court granted judgment in defendant's favor and rendered a lengthy opinion from the bench. The trial judge relied heavily on *Colony Park Ass'n v Dugas,* 44 Mich App 467; 205 NW2d 234 (1973), and *Sylvan Glens Homeowners Ass'n v McFadden,* 103 Mich App 118; 302 NW2d 615 (1981), *lv den* 411 Mich 1050 (1981), in reaching his decision. He summarized his reasoning as follows:

"In my judgment it is best that the court, reviewing

this wording, arrive at the decision on the same basis and rationale as was arrived in the case of *Colony Park,* and that is that the requested restriction reluctantly is denied for the following reasons

"The restrictions themselves fail to specify motor homes for inclusion. That there is nothing to indicate that contemporary motor homes were within the contemplation of the drafters, and I emphasize drafters in this case because I do not dispute the fact that people who buy into this property now, may have drawn a conclusion that motor homes were prohibited, but I rely on the drafters themselves in the inception and for me to say that it was reasonable for those buying into this property to conclude that motor homes were prohibited, would be as unfair as for me to conclude that buying into this neighborhood relied on there not being any restrictions to motor homes.

"Thirdly, the rule of construction which provides that where restrictions are ambiguous or uncertain they shall be resolved in favor of free use of the property."

The issue submitted for our determination is whether the trial court erred in ruling that defendant had not violated a certain restrictive covenant by parking a motor home in his driveway, based upon a finding that a motor home was not a "coach" or "temporary shelter" and therefore was not prohibited.

Review of this case in equity is *de novo. Cooper v Kovan,* 349 Mich 520; 84 NW2d 859 (1957).

The trial judge held that defendant had not violated the covenant by parking a motor home in his driveway. The judge gave three reasons for the holding: (1) the restriction fails to mention motor homes specifically; (2) there is nothing to indicate that the drafters intended to prohibit motor homes; and (3) ambiguous restrictions must be construed in favor of the free use of property.

Plaintiffs argue that the drafters' intent to pro-

hibit motor homes was clear notwithstanding the fact that they were not specifically mentioned. In addition, plaintiffs urge this Court to find that the trial court misapplied the rule that ambiguities must be resolved in favor of the free use of property. See *Sampson v Kaufman,* 345 Mich 48, 50; 75 NW2d 64 (1956). Plaintiffs contend that that rule is but one of several rules of construction and was not applicable here where the parties' intent was clear. The general rules which plaintiffs point to have been gathered from numerous cases.

When interpreting a restrictive covenant, courts must give effect to the instrument as a whole where the intent of the parties is clearly ascertainable. *Cooper, supra,* 527. Where the intent is clear from the whole document, there is no ambiguous restriction to interpret and the rules pertaining to the resolution of doubts in favor of the free use of property are therefore not applicable. *Id.,* 527-528. In placing the proper construction on restrictions, if there can be said to be any doubt about their exact meaning, the courts must have in mind the subdivider's intention and purpose. *Ottawa Shores Home Owner's Ass'n, Inc v Lechlak,* 344 Mich 366; 73 NW2d 840 (1955). The restrictions must be construed in light of the general plan under which the restrictive district was platted and developed. *Id.* In attempting to give effect to restrictive covenants, courts are not so much concerned with the grammatical rules or the strict letter of the words used as with arriving at the intention of the restrictor, if that can be gathered from the entire language of the instrument. *Tabern v Gates,* 231 Mich 581, 583; 204 NW 698 (1925). Moreover, the language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to

technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon. *Seeley v Phi Sigma Delta House Corp,* 245 Mich 252; 222 NW 180 (1928). Covenants are to be construed with reference to the present and prospective use of property as well as to the specific language employed and upon the reading as a whole rather than from isolated words. *Donnelly v Spitza,* 246 Mich 284; 224 NW 396 (1929).

It is plaintiffs' position that if those rules are applied properly to this case, plaintiffs must prevail. We agree. In reviewing the covenant as a whole, construing it with reference to the present and prospective use of the property, and being concerned more with the intent of the restrictor than the strict letter of the words used, and by taking the language in its generally understood or popular sense without technical refinement and without seeking dictionary definitions, we conclude that the covenant prohibits the parking of motor homes such as defendant's within the subdivision. The evident purpose of the restriction was to prohibit a general class of large vehicles, whether automobile-drawn or self-propelled. The drafters apparently believed that such items are eyesores and destroy the aesthetics of a neighborhood. The mere fact that the restrictive covenant failed to mention motor homes which, it is important to note, were not in existence when the restriction was written, should not preclude a finding that the drafters intended to prohibit such vehicles. As the Supreme Court said in *Donnelly, supra,* 286-287:

"It is hardly to be supposed that a restriction in 1919 was intended to irrevocably fix the character of construction to that common to the times, and to prevent developments which later change of style, taste, archi-

tectural idiosyncrasy, or artistry, or practical necessity, convenience, or utility would bring."

That same principle should be applied here, where the restriction was drafted in 1958, to find that the drafters of the restriction did not intend to prohibit only those specifically mentioned items, but intended to prohibit a class of vehicles including motor homes.

The trial court erred in finding that the restrictive covenant is ambiguous and therefore must be construed in defendant's favor. The intent of the restriction is clear and this Court finds that the defendant's activity is prohibited.

In reaching its decision, the trial court relied heavily on two decisions of this Court which are similar to the case at bar and which defendant contends are on point and controlling. In *Colony Park Ass'n, supra,* 468, the following restrictive covenant was at issue:

" 'No tent, camping outfit or other temporary structure shall be erected, maintained or suffered to remain on said lots except such temporary structures as may be necessary for use in connection with the construction of such buildings and other structures as are permitted by this contract for such time and under such conditions as may be permitted in writing by said first parties.' "

This Court held:

"Examining the full text of the restriction, we note that it fails to specify motor homes for exclusion. The restriction was adopted in 1927. There is nothing to indicate that contemporary motor homes were within the contemplation of the drafters and *it is significant to note that the restriction fails to prohibit automobile drawn trailer homes.* Under the principles that restrictive covenants on the use of land are not favored and

are to be strictly construed against parties seeking their enforcement, *Eveleth v Best,* 322 Mich 637, 642 [34 NW2d 504] (1948); *Moore v Kimball,* 291 Mich 455, 461 [289 NW 213] (1939), and where restrictions are ambiguous, uncertainties are resolved in favor of the free use of property, *Bastendorf v Arndt,* 290 Mich 423, 426 [287 NW 579] (1939), we rule to affirm the trial court." (Emphasis added.) *Id.*

*Colony Park Ass'n* is distinguishable because the restriction there is not similar to the restriction herein. The restriction in *Colony Park Ass'n* did not prohibit trailers or coaches. The holding in *Colony Park Ass'n* stated that the failure of the restriction to prohibit automobile-drawn trailer homes was "significant". Thus, the Court implied that had such trailers been prohibited, this Court would have found motor homes were also prohibited. The trial court's reliance on *Colony Park Ass'n* was misplaced. That case does not require a finding that the restriction here does not include motor homes.

In *Sylvan Glens* a divided panel of this Court found that the following restrictive covenant did not prohibit defendant from parking his Winnebago motor home in his driveway:

" 'TEMPORARY STRUCTURES: No temporary building of any kind erected on any parcel in this subdivision shall at any time be used as a temporary or permanent residence. Nor shall any trailer be used or kept thereon. Nor shall any equipment or material be stored thereon after the structure is completed. Nor shall any boat be used or kept thereon unless kept within *[sic]* enclosed garage.' (Emphasis added.)" *Id.,* 121.

The majority based its decision on the dictionary definition of "trailers" and found that motor homes were not embraced within that word be-

cause a motor home is not "an automobile-drawn highway vehicle". *Id.,* 122. We do not agree with defendant's contention that *Sylvan Glens* is controlling herein.

The majority in *Sylvan Glens* apparently did not think it significant that the dictionary further defined "trailers" as "designed to serve wherever it is parked as a dwelling or as a place of business" even though the dictionary similarly defined a motor home as a "self-contained traveling home". *Id.* Such similarities should not have been ignored. In addition, we agree with Judge KAUFMAN's dissent in *Sylvan Glens.* The proper inquiry, according to the dissent, is not whether the Winnebago was a trailer within the strict statutory or dictionary definition but whether the defendant's activity was of the type intended to be prohibited. Judge KAUFMAN concluded, upon looking at the parties' intent, that it was clear that motor homes were within the parameters of the restriction. Plaintiffs argue that such approach is a more reasonable one, is based upon the general rules of construction, and should be followed here. We agree. Motor homes are the type of vehicle intended to be prohibited by the restrictive covenant in this case.

It should further be noted that even if *Sylvan Glens* were correctly decided, it can be distinguished from the instant case. The restriction here is broader. In addition to prohibiting trailers (like the restrictive covenant in *Sylvan Glens),* the restriction in the instant case prohibits coaches and temporary shelters. When those words are taken as generally understood in their popular sense, they must be held to embrace motor homes. In fact, defendant testified that he used his motor home in his driveway as a temporary shelter on at least one occasion.

We conclude that the trial court erred in ruling that defendant had not violated the restrictive covenant in question by parking a motor home in his subdivision driveway. The trial court incorrectly found that motor homes were not included in the restriction which prohibited a "house trailer, trailer, coach, tent or temporary shelter including fishing shanty". Notwithstanding the fact that the restriction fails specifically to mention motor homes, the drafters clearly intended to prohibit such type of vehicle. Under a proper application of the general rules of construction of restrictive covenants, the trial court should have concluded that defendant had violated the covenant.

Reversed.