# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW T. THIEL and NIKOLE M. THIEL,

        Plaintiffs-Counter-
        Defendants/Appellants,

and

WILLIAM TRAYWICK and MARCIA
TRAYWICK,

        Intervening Plaintiffs-Counter-
        Defendants/Appellants,

v

DAVID L. GOYINGS and HELEN M.
GOYINGS,

        Defendants-Counter-
        Plaintiffs/Appellees.

UNPUBLISHED
August 8, 2017

No. 333000
Allegan Circuit Court
LC No. 15-055184-CK

Before: HOEKSTRA, P.J., and MURPHY and K. F. KELLY, JJ.

PER CURIAM.

Plaintiffs/counter-defendants-appellants, Matthew T. Thiel and Nikole M. Thiel, and intervening plaintiffs/counter-defendants, William Traywick and Marcia Traywick (collectively "plaintiffs"), appeal as of right an order dismissing for no cause of action their claims against defendants/counter-plaintiffs, David L. Goyings and Helen M. Goyings. Plaintiffs sued defendants for installing a modular home in the neighborhood in violation of a restrictive covenant and asked the trial court to order the home removed. Defendants counter-sued for a declaration that the home did not violate the restrictive covenant. Defendants also claimed that the Traywicks violated the restrictive covenant and that equitable estoppel and waiver applied. Following a three-day trial, the trial court determined that defendants' home did not violate the restrictive covenant. The trial court further found that the Traywicks' home did not violate the restrictive covenant and that neither equitable estoppel nor waiver was shown. We affirm the

-1-

trial court's order to the extent it denied defendants' counter-claim.[1]  However, we reverse the order to the extent the trial court ruled against plaintiffs.  The trial court erred when it read an ambiguity into the unambiguous restrictive covenant.  It should have granted judgment in plaintiffs' favor and ordered defendants to remove the modular home.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

On June 18, 2015, the Thiels filed a complaint against defendants, alleging that defendants violated Timber Ridge Bay's "Declaration of Restrictions, Covenants and Conditions" by installing a modular home on their property.  The restrictive covenant provides, in relevant part:

### COVENANTS, RESTRICTIONS AND CONDITIONS

Section 1.　　Establishment of Restrictions. In order to provide for congenial occupancy of the Premises, and for the protection of the value of the Parcels therein, the Parcels shall be subject to the limitations set forth below:

***

B. Building and Use Restrictions

***

3.　　Relocated Residences No residences, including modular, manufactured, mobile or prefabricated homes, may be moved from a location outside the Premises and placed or located within a Parcel within the Premises.

4.　　Manufactured Housing Units No manufactured homes whether classified as a mobile home, modular home, or otherwise, and no prefabricated homes shall be permitted on any Parcel in the Premises; regardless of which building codes are applicable to said homes.

C. Residential Dwelling Restrictions

***

4.　　The height of any building will not be more than four (4) stories. If any portion of a level or floor within a residence is below grade all of the level or floor shall be considered a basement level. All residences shall be stick built on site and no geodesic dome; berm house, pre-fabricated or modular home, mobile home, shack or barn will be erected on any of the Parcels unless provided for herein.

---

[1] Defendants have not filed a cross appeal.

Count I of the complaint alleged breach of contract and sought enforcement of the restrictive covenant by full removal of the home. Count II sought a permanent injunction.

Defendants filed a counter-claim, seeking a declaratory judgment to establish the legal rights of the parties with respect to the restrictive covenant. Defendants also claimed equitable waiver and estoppel of enforcement of the restrictive covenant, alleging that the Thiels previously failed and refused to enforce numerous violations throughout the subdivision, including matters involving driveway setbacks, docks, and liquid propane (LP) tanks.

The Traywicks were allowed to intervene and filed a complaint on August 19, 2015. Again, defendants filed a counter-claim as they did with the Thiels and also alleged that the Traywicks were in violation of the restrictive covenant for having prefabricated panels in their basement.

In response to plaintiffs' combined motion for summary disposition, defendants argued that the restrictive covenant was ambiguous because there were no definitions for "prefabricated" or "modular." They argued that their home was "a mix, or hybrid" in that they designed the home with Heritage Custom Builders using computer assisted design (CAD). Defendants maintained that a majority of the home was to be stick built on site with only a minority of the home built at the Ritz Craft facility. The trial court denied plaintiffs' motion and wondered aloud whether if the majority of the home was stick built on-site it complied with the covenant.

A three-day trial ensued. At trial, Helen Goyings acknowledged that the home was comprised in part of three modules that were manufactured at Ritz-Craft in Jonesville, Michigan, brought to the lot on a trailer, and a crane was used to swing the modules into place. She testified: "I would agree with you that my home is a system built home with three modules. It is majority stick built on site. The entire house is stick built, it's just part of it was not stick built on site." Much of the trial was focused on a differentiation between a "systems built home" and a modular home, as well as the quality and value of defendants' home.

The trial court issued a lengthy opinion and order after trial. The trial court concluded that, although defendants and their witnesses preferred to use the term "systems built," it was "clear that the term is similar to, if not synonymous with, modular." Nevertheless, the trial court concluded:

> The modules here are not a residence as they are delivered; additional construction is required to add in the electrical, duct work, plumbing, roof, and the various components that make a house a habitable home. The majority of the residence is being stick built on site. The parties here have allowed for other types of components to be prefabricated: trusses, foundation, cabinets, etc. The wording of the restrictive covenants is too broad and does not clarify what percentage of a home is allowed to be prefabricated before the entirety of the home is barred by the restrictions. If a home having prefabricated components is allowed to remain in Timber Ridge Bay, this home, containing components built elsewhere, must be allowed to remain.

-3-

Additionally, it is clear that Defendants' home is not in violation of congeniality standards and does not endanger the value of the other parcels within the subdivision. In looking at the pictures of the home provided by Plaintiffs, it is apparent that the home is not an eyesore and it is unlikely that anyone would know that the home had been built anywhere but on the property. As stated in the facts above, this home meets all of the standards and specifications of a stick-built home. The aesthetics, quality and value are of the same standards as the other homes that exist and will be built within the subdivision.

As a result, the trial court ordered:

This Court declines to find that Defendants' home is in violation of the wording of the deed restrictions, covenants and conditions. While the restrictions, covenants, and conditions in this deed may not seem to be ambiguous in their wording, they did not contemplate a home of the type built by Defendants. Because the home Defendants have designed and built in this case does not neatly fit into the category of modular or stick-built on site, the Court must look beyond the implied meaning of the undefined terms utilized in the deed restrictions, covenants and conditions.

This Court finds that this home is in conformance with the intent of the drafter. Because the overriding goal is to ascertain the intent of the drafter and because the Michigan Supreme Court has indicated that all doubts should be construed in favor of the free use of the property, this Court will uphold the stated intent of the drafter: to provide for congenial occupancy of the Premises and for the protection of the value.

While an entirely modular, premanufactured or prefabricated home cannot be moved onto the properties located within Timber Ridge Bay, the home designed by Defendants is sufficiently constructed, valued, and congenial as to allow it to remain. A systems-built home of similar value, construction and congeniality shall be allowed on the Timber Ridge Bay properties.

Recognizing that the opinion did not dispose of all of the claims in the case, the trial court entered an amended order on April 27, 2016, which dismissed for no cause of action plaintiffs' complaints. The trial court ordered that none of the parties violated the restrictive covenants and further ordered that there was no equitable estoppel and waiver. Plaintiffs now appeal by right.

## II. ANALYSIS

Plaintiffs argue that defendants' home was a modular home in violation of the restrictive covenant and that the trial court was required to enforce the restrictions as written to uphold the freedom of contract. We agree. "We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo." *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made. *Id.* "The interpretation of restrictive covenants is a question of law that this Court

-4-

reviews de novo." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 389; 761 NW2d 353 (2008), citing *Terrien v Zwit*, 467 Mich 56, 60–61, 648 NW2d 602 (2002).

Our Supreme Court has confirmed that restrictive covenants are contracts with a particular value:

> Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property. Such deed restrictions generally constitute a property right of distinct worth. Deed restrictions preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment. If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land. Such contracts allow the parties to preserve desired aesthetic or other characteristics in a neighborhood, which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties. [*Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007).]

In terms of restrictive covenants, our Supreme Court has recognized "two essential principles, which at times can appear inconsistent. The first is that owners of land have broad freedom to make legal use of their property. The second is that courts must normally enforce unwaived restrictions on which the owners of other similarly burdened property have relied." *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 343; 591 NW2d 216 (1999). These types of cases are, therefore, decided on a case-by-case basis. *Id.*

"In construing restrictive covenants, the overriding goal is to ascertain the intent of the parties. Where the restrictions are unambiguous, they must be enforced as written." *Johnson*, 281 Mich App at 389 (citations omitted). "[T]he language employed in stating the restriction is to be taken in its ordinary and generally understood or popular sense, and is not to be subjected to technical refinement, nor the words torn from their association and their separate meanings sought in a lexicon." *Borowski v Welch*, 117 Mich App 712, 716–17; 324 NW2d 144 (1982). Our Supreme Court has cautioned against judicial over-stepping when interpreting restrictive covenants:

> The dissent justifies its amending from the bench by asserting that "[t]he absence of a definition in the restrictive covenants" of the terms "commercial, industrial, or business enterprises" leaves these terms ambiguous, and thus "opens the terms to judicial interpretation." We find this to be a remarkable proposition of law, namely, that the lack of an explicit internal definition of a term somehow equates to ambiguity—an ambiguity that apparently, in this case, allows a court free rein to conclude that a contract means whatever the court wants it to mean. Under the dissent's approach, any word that is not specifically defined within a

contract becomes magically ambiguous. If that were the test for determining whether a term is ambiguous, then virtually all contracts would be rife with ambiguity and, therefore, subject to what the dissent in "words mean whatever I say they mean" fashion describes as "judicial interpretation." However, fortunately for the ability of millions of Michigan citizens to structure their own personal and business affairs, this is not the test. As this Court has repeatedly stated, the fact that a contract does not define a relevant term does not render the contract ambiguous. Rather, if a term is not defined in a contract, we will interpret such term in accordance with its "commonly used meaning." [*Terrien v Zwit*, 467 Mich 56, 75–76; 648 NW2d 602, 613 (2002) (citations and footnotes omitted).]

Here, the restrictive covenant was not rendered ambiguous for failure to specifically define "modular." Nor does defendants' tortured use of the term "systems built" at trial render the covenant unambiguous. In fact, the trial court correctly concluded that the two terms were synonymous. The trial court later erred, however, when it concluded that the covenant was nevertheless ambiguous because "modular" was not defined in the restrictive covenant. Just as in *Terrien*, this was inappropriate. *The Random House Dictionary of the English Language: Second Unabridged Edition*, p 1237, defines "modular" as " . . .**1.** of or pertaining to a module or a modulus. **2.** composed of standardized units or sections for easy construction or flexible arrangement: *a modular home; a modular sofa. . . .*" The restriction should have been accorded its ordinary and generally understood or popular sense, without technical refinement. The trial court was required to enforce the restrictions as written.

We acknowledge that these types of cases are difficult and that the trial court strived to find an equitable solution. Nevertheless, where defendants' home was in clear violation of the unambiguous restrictive covenant, the only solution was to grant injunctive relief and order that the non-conforming home be removed. Our Court has explained:

Michigan courts generally enforce valid restrictions by injunction. Moreover, courts typically do not consider the parties' respective damages, as is illustrated by the case law that follows. Owners may enforce negative easements regardless of the extent of the owners' damages. When enforcing a negative easement, it is wholly immaterial to what extent any other lot owner may be injured by the forbidden use. The economic damages suffered by the landowner seeking to avoid the restriction do not, by themselves, justify a lifting of the restrictions. [*Webb v Smith*, 224 Mich App 203, 211; 568 NW2d 378 (1997).]

There are certain equitable exceptions, including "(1) technical violations and absence of substantial injury, (2) changed conditions, and (3) limitations and laches." *Webb,* 224 Mich App at 211. None of these exceptions apply.

Defendants' labored attempt to argue that a modular home is just as good as a stick built on site home is of no consequence in the face of the plain reading of the restrictive covenant. The construction and value of the home is not at issue and, in fact, defendants' tactic in presenting numerous witnesses who testified that defendants' home was high-quality and that any assumption to the contrary was unfounded supports the basis for the restrictive covenant. Justified or not, there is a perception that modular homes are of lesser quality and will bring

down the value of the neighborhood. The restrictive covenant was drafted for that precise reason. The trial court was not at liberty to decide whether it agreed with the covenant; it was required to enforce the restrictions as written.

Affirmed in part and reversed in part. Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ William B. Murphy
/s/ Kirsten Frank Kelly